UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:17cv1638-ORL-31tbs

PEGGY NOFTZ,

      Plaintiff,

vs.

HOLIDAY CVS LLC,

      Defendant.

_____/

## PLAINTIFF'S OMNIBUS MOTION IN LIMINIE

Plaintiff, PEGGY NOFTZ, by and through undersigned counsel, and in accordance with this Courts Case Management and Scheduling Order (D.E. 12), and hereby files her Omnibus Motion In Liminie, , and states as follows:

**I: PLAINTIFF MOVES IN LIMINIE TO STRIKE DEFENDANT'S EXPERTS KETCHUM AND TALL, FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF RULE 26 (2) (A), AND THE COURTS CASE MANAGEMENT AND SCHEDULING ORDER (D.E. 12).**

In accordance with this Court's Case Management and Scheduling Order (D.E. 12), the Plaintiff and Defendant were to comply with the Requirements of Rule 26 (2) (a), by April 30, 2018 and May 30, 2018, respectively. On July 23, Defendant filed Defendant's Motion For Extension of Time to Disclose Expert Reports, only **(D.E. 42),** wherein defendant only sought an extension of time to serve its Expert Reports. By Endorsed Order of July 24, 2018, the Court Granted Defendant's motion, extending the deadlines for Defendant to file expert reports, until July 30, 2018. **(D.E. 44)**. Neither Defendant's Motion For Extension of Time request, nor does the Court's Order extend the time for Defendant to Disclose its experts in accordance with the requirements of Rule 26(a) (2).

In accordance with this Court's Case Management and Scheduling Order (D.E. 12), the parties were required to **fully** and timely comply with the Federal Rule of Civil Procedure 26(a)(2) and 26(e), regarding the disclosure of experts. The rule requires the following:

(2) *Disclosure of Expert Testimony.*

(A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

> (ii) the facts or data considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

> (vi) a statement of the compensation to be paid for the study and testimony in the case.

On July 30, 2018 Defendant filed the expert reports of Dr. Reginald Tall (Medical) and Robert E. Ketchum (Liability) .  However, Defendant failed to fully comply with Rule 26 (a) (2), as required, in the following manner.

> a. Defendant did not file its Rule 26 Expert Witness Disclosure until September 14, 2018; **(D.E. 61)**

> b. Defendant failed to timely provide the witnesses qualifications, or a list of publications authored in the previous 10 years.  Defendant provided its Experts CV by email of August 21, 2018, three weeks after the Court ordered deadline. (Email Attached as **Exhibit "A"**)

    c.       Defendant failed to timely produce a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial of by deposition. Defendant provided its experts testimony list by email of August 21, 2018, three weeks after the Court ordered deadline.

    e.       Defendant failed to timely provide a statement of the compensation to be paid for the study and testimony in the case. Defendant sent an email of August 21, 2018, three weeks after the extended deadline which simply listed the experts hourly.

In accordance with this Court's Case Management and Scheduling Order **(D.E. 12)**, discovery cut off deadline was July 2, 2018.  As a result of Defendant's failure to even file an Expert Witness Disclosure in  accordance with the time frame set forth within the Court's orders, and Rule 26 (2)(a), Plaintiff did not even learn the identity of Defendant's Experts until six (6) weeks after the discovery cut off, and the filing of discovery related motions.  As a result of Defendant's non-compliance with the requirements of Rule 26 (2) (A) and this Court's Case Management and Scheduling Order, plaintiff has suffered significant and incurable prejudice. Specifically, Plaintiff has been, inter alia, effectively prohibited from conducting any expert witness discovery, which discovery is indispensable to the filing of  Daubert Motions, and more importantly to Plaintiff's preparation for trial of this case.

      The Scheduling Order required Defendant to fully comply with Federal Rule of Civil Procedure 26(a)(2), which governs initial disclosures pertaining to expert witness testimony. Rule 26(a)(2) (A) requires , a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.  The Rule likewise requires a party offering an expert witness to provide its opponent with "a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case." Fed.R.Civ.P. 26(a)(2) (B). The written report must include, inter alia: (1) a summary of the expert's opinions; (2) the information

upon which the witness relied in reaching his or her opinions; (3) any exhibits to be introduced through the expert; (4) the witness's qualifications to testify as an expert.

Rule 37(c)(1) governs a party's failure to comply with discovery obligations set forth in Rule 26(a)(2). Rule 37 requires "absolute compliance" with Rule 26(a). *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2002). It provides, in relevant part: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or was harmless. Fed.R.Civ.P. 37(c)(1). This rule also allows a court to impose lesser sanctions, including the imposition of reasonable attorney's fees or "other appropriate sanctions." Fed.R.Civ.P. 37(c)(1)(A)-(C).

The sanction of exclusion is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Young v. Lexington Ins. Co.*, 269 F.R.D. 692, 693 (S.D. Fla. 2010); *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2002); *Nutrasweet Co. v. X-L Engineering Co.*, 227 F.3d 776, 786 (7th Cir. 2000); *Lampe Berger USA, Inc. v. Scentier, Inc.*, 2008 WL 3386716 *2 (M.D. La. 2008). *Bowe v. Consolidated Rail Corp.*, 230 F.3d 1357 (6th Cir. 2000). *See also Salgado v. General Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir.1998) (holding that Rule 37(c)(1) puts teeth into Rule 26 and that "the district court acted well within its discretion when it decided to impose the sanction of precluding the witnesses from testifying" since "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless"); *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996) (same); *Ames v. Van Dyne, No. 95-3376*, 1996 WL 662899 at *4 (6th Cir. Nov. 13, 1996) ("Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a)

material.") (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir.1995); *Caskey v. Man Roland, Inc.*, 83 F.3d 418 (5th Cir.1996) (district court abused its discretion in failing to invoke mandatory exclusion sanction of Rule 37(c)(1)); *Red Dot Buildings v. Jacobs Technology, Inc.*, 2012 WL 2061904 *3 (E.D. La. 2012), ("The failure to meet a court-ordered deadline for supplementing an expert report is no trifling matter.")

The burden is on the potentially sanctioned party to prove harmlessness. *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009); *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2002); *Salgado v. General Motors Corp.*, 150 F.3d 735, 741-42 (7th Cir. 1998); *Wilson v. Bradlees of New England*, 250 F.3d 10, 21 (1st Cir. 2001); *Heidtman v. County of El Paso*, 121 F.3d 1038, 1040 (5th Cir. 1999).

The harmlessness exception has been described as "but a narrow escape hatch" in the case of noncompliance with Rule 26(a)(2). See *Lohnes v. Level 3 Commc'ns Inc.*, 272 F.3d 49, 60 (1st Cir. 2001); *Adams v. J. Meyers Builders, Inc.*, 671 F.Supp2d 262, 270 (D. N.H. 2009); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir.2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with [Rule 26] was either justified or harmless....").

Courts have widely excluded expert testimony based on disclosures that were tendered after the applicable disclosure deadline. See *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th. Cir. 2011); *Walter Int'l Productions, Inc. v. Salinas*, 650 F.3d 1402, 1412-13 (11th Cir. 2011); *Vance v. Ball State University*, 646 F.3d 461, 469 (7th Cir. 2011); *Mee Industries v. Dow Chemical Co.*, 608 F.3d 1202, 1221-1222 (11th Cir. 2010); *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824(11th Cir. 2009); *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1311

(11th Cir. 2009); *Romero v. Drummond Co.*, 552 F.3d 1303, 1321-23 (11th Cir. 2008); *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008); *United States v. Red Elk*, 185 Fed. Appx. 716, 723 (10th Cir. 2006); *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2002); *Quevedo v. Trans-Pacific Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 720 (3rd Cir. 1997); *Boardman v. Nat'l Med. Enters.*, 106 F.3d 840, 843 (8th Cir. 1997); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572-73 (5th Cir. 1996); *Lema v. Comfort Inn, Merced*, 2012 WL 170161 (E.D. Cal. 2012); *Hiller v. Allstate Property And Casualty Ins. Co.*, 2012 WL 2325603 *12-13 (E.D. Wash. 2012); *Williams v. Marinemax of Central Florida, LLC*, 771 F.Supp.2d 1265, 1267 (N.D. Fla. 2011); *Jasin v. Koslowski*, 2011 WL 3627322 *3 (M.D. Pa. 2011); *Washington v. Hovensa*, 2011 WL 6965855 *1 (D.V.I. 2011); *Hewitt v. Liberty Mutual Group*, 265 F.R.D. 681, 683 (M.D. Fla. 2010); *Afcan v. United States*, 2010 WL 3123131 *4-5 (D. Alas. 2010); *Barnthouse v. Wild Dunes Resort, LLC*, 2010 WL 3169358 *2 (D. S.C. 2010); *Roberts v. Scott Fetzer Co.*, 2010 WL 3546499 (M.D. Ga. 2010); *Pfizer, Inc. v. Ivax Pharmaceuticals, Inc.*, 2009 WL 1885100 *3 (D.N.J. 2009); *Bray & Gillespie Management, LLC, v. Lexington Insurance Co.*, 259 F.R.D. 591, 610-16 (M.D. Fla. 2009); *Bowers v. National Collegiate Athetic Ass'n*, 564 F.Supp.2d 322, 334 (D.N.J. 2008); *Keten v. State Farm Fire And Casualty Co.*, 2008 WL 5220854 (N.D. Ind. 2008); *Braswell v. Agri-Fab, Inc.*, 2006 WL 5086608 ((M.D. La. 2006); *Benedict v. Zimmer, Inc.*, 232 F.R.D. 305, 315 (N.D. Iowa 2005); *White v. Volvo Trucks of North America, Inc.*, 211 F.R.D. 668 (M.D. Ala. 2002); *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001); *Phillips v. General Motors Corp.*, 2000 W.L 1285380 *5 (E.D. La. 2000); *Dale v. General Motors Corp.*, 109 F.Supp.2d 1376, 1385 (N.D. Ga. 1999); *Neff v. Ford, The City of New Orleans*, 1997 WL 465286 (E.D.La. 1997); *Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589, 591 (D. N.J. 1994). "Because the expert witness

discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, ... compliance with the requirements of Rule 26 is not merely aspirational." *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F.Supp.2d 1241, 1248 (M.D. Fla. 2012), quoting *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir.2004).

The factors to consider in determining whether to exclude testimony not timely disclosed are as follows: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 720 (3rd Cir. 1997). In this Circuit, the factors have been described as follows:

"(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F.Supp.2d 1241, 1250-51 (M.D. Fla. 2012). The primary reason for excluding untimely expert opinions is to avoid an unfair "ambush" in which a party advances new theories or evidence to which its opponent has insufficient time to formulate a response. *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230-31 (7th Cir. 1996); *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F.Supp. 924, 934 (N.D. Ill. 2008). Put another way, "discovery is not a game of "blind man's bluff". *Parrish v. Freightliner, LLC*, 471 F.Supp.2d 1262, 1270 (M.D. Fla. 2006). In *Parrish*, the court struck testimony based on an untimely served report and which changed the theory the party sought to

advance. The court noted that the opposing party had already spent considerable time and resources opposing the sanctioned party's original theory. *Id.*, at 1270.

Defendant's eleventh hour expert report and pictures are exactly the sort of "trial by ambush" that Courts are concerned with avoiding and Rule 26 was designed to prevent. See *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 56 (1st Cir. 2011); *Rogers v. United States*, 2012 WL 419831 *3 (Fed.Cl., 2012). In *Parrish v. Freightliner, LLC*, 471 F.Supp.2d 1262, 1269 n.3 (M.D.Fla.,2006)., Judge Corrigan wrote: This is not limited to the Rule 26(e) violation. Rule 1 sets forth the scope and purpose of the Federal Rules of Civil Procedure, and states, in pertinent part: "[t]hese rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." While litigants and lawyers often require legitimate delay in discovery and trial due to various factors, the Court finds the present situation to be far different from the norm.

Here, despite having received no extension of time to do so, (the Court ordered extensions and relief sought by Defendant were to provide expert reports, only) Defendant failed to even disclose the identity of its experts until July 21, 2018, in violation of the Court's Case Management and Scheduling Order and Rule 26 2 (A).   As a result, Plaintiff did not even learn the identity of Defendant's Experts until nineteen (19) days after the July 2, 2018 discovery cut-off deadline. Accordingly, Plaintiff was given no opportunity to conduct expert witness discovery in preparation for trial, and/or to obtain discovery/information necessary to file Daubert motions.  The prejudice to Plaintiff cannot be cured absent the reopening/extension of discovery in this case, which had previously been denied by this Court. **(D.E. 36)**.   Additionally, Defendant failed to provide its experts qualifications, case list, publications and compensation, until three weeks after the date in which it was last ordered by this Court to do so.

By contrast, Plaintiff filed its Expert Witness Disclosures on May 30, 2018, together with said experts case list and CV, in accordance with the Court's directives. All in accordance with Rule 26(2) (A) and well in advance of June 29, 2018 deadline set forth in the Court's Endorsed Order extending the time frame for Plaintiff' to file Plaintiff's Expert Witness Report (**only**). **(D.E. 34)**     As such, unlike Plaintiff, Defendant was made aware of the identity, prior testimony and qualifications of Plaintiff's expert witnesses, well in advance of the July 2, 2018 discovery cut off, and thereby was afforded sufficient time to conduct written expert discovery, to seek the deposition of Plaintiff's expert witnesses, and/or to file a Motion to extend time to do so prior to the discovery cut-off.     By virtue of its failure to timely comply with the Court's Case Management and Scheduling Order and Rule 26 (2)(A), as described above, Defendant has gained an unfair, and incurable advantage in this case.

For the foregoing reasons, Plaintiff submits that Dr. Reginald Tall and Robert E. Ketchum testimony should be excluded.


**II:**     **PLAINTIFF'S MOVES IN LIMINIE TO STRIKE ROBERT E. KETCHUM, P.E.
AS EXPERT WITNESS, OR IN THE ALTERNATIVE, MOTION TO STRIKE
UNRELIABLE OPINIONS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Peggy Noftz, by and through undersigned counsel, and pursuant to Rule 26 of the Federal Rules of Civil Procedure, Rule 16.1 of the Local Rules for the Middle District of Florida, and Rule 702 of the Federal Rules of Evidence, hereby files this, its Motion to Strike Robert Ketchum P.E. as expert witness, or, in the Alternative, Motion to Strike Unreliable Opinions, and as grounds states as follows:

This matter arises out of a slip and fall at Defendant's CVS store located in Kissimmee, Florida.  Specifically, Plaintiff's alleges to have slipped and fallen upon milky "wetness" located on the floor directly outside of the store's walk-in dairy/milk cooler.  It is Plaintiff's theory of

liability that: (1) Defendant CVS was negligent in the maintenance of the floor inside of its walk in cooler, which it knew of should have known was routinely wet from spillage from large quantities of milk stored upon rolling shelves, and on the floor inside of said cooler; (2) Defendant negligently placed or left its rolling milk rack too far inside the cooler, thereby requiring Plaintiff and others to step inside of the cooler and into the accumulation of milk product on the floor, which was then tracked in small quantities to the floor area just outside the cooler, creating a slippery/hazardous condition where Plaintiff and other customers would traverse; and (3) Defendant negligently failed to implement measures to prevent the tracking of quantities of milk product from the floor inside of the cooler to the floor just outside of the cooler by its employees and customers, or to warn its customers of the potentially slippery condition.

Defendant has disclosed Robert Ketchum, P.E. as its liability expert to for the specific purpose of "determining the potential for moisture collecting in the area of the reported event". Mr. Ketchum has rendered the following opinions in this case: (1) Based on our observations of the current conditions, and review of the documents provided, it is our professional opinion that there is no evidence of moist, wet, or slippery conditions of the flooring in the area of Ms. Noftz's fall: (2) Ms. Noftz fell due to her left leg failing to support her as she approached the cooler. [Expert Report, attached hereto as ***Exhibit A***]

All of Mr. Ketchum's anticipated opinions fail to meet the requisites of FRE 702/*Daubert* in that Mr. Ketchum lacks the qualifications to opine on these matters, Mr. Ketchum has failed to apply any reasonable scientific methodology in arriving at his opinions, and Mr. Ketchum's opinions in no way assist the trier of fact, but instead state the obvious and seek the tell the Jury how to decide the case.

On October 30, 2016, Plaintiff was an invited guest/customer at Defendant's CVS store. The moments leading up to Plaintiff's fall, Plaintiff's actual fall, and the moments following Plaintiff's fall were all captured on CCTV. The Jury will be able to watch the footage at trial and will be in a position to assess the footage for itself; expert "interpretation" of what is readily apparent to the Jury is not necessary and, in fact, will violate the province of the Jury. Moreover, as detailed below, not only is Mr. Ketchum unqualified to render the opinions he has formulated, but, more importantly, his opinions are devoid of the requisite basis or scientific methodology necessary for admission at trial.

FRE 702 requires an expert to be qualified either by knowledge, skill, experience, training, or education. However, an expert's opinions must be based upon sound scientific principles and cannot be based on experience alone. *Kumho Tire Co. Ltd v. Carmichael*, 526 U.S. 137, 157, 119 S.Ct. 1167 (1999). FRE 702 plainly contemplates that the District Court will serve as a gatekeeper to the admission of scientific testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 2795 (1993). The district courts maintain this role "to ensure that speculative, unreliable expert testimony does not reach the jury 'under the mantle of reliability that accompanies the appellation 'expert testimony.' " *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting *McCorvery v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). As gatekeeper, the district courts properly exclude any expert or expert opinion that does not satisfy the following criteria:

(1) The expert must be qualified to testify competently regarding the matters he intends to address; (2) the methodology used to reach any conclusions must pass the Daubert test of reliability; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

FRE 702; *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341-2 (11th Cir. 2003) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 138 F.3d 548, 562 (11th Cir. 1998)). The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there is inevitably some overlap, they remain distinct concepts that must be individually analyzed. *United States v Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The foundation of reliability is critical, because without it, an expert may support an opinion with the mere assertion "because it is my opinion." An expert opinion is not admissible when the only connection between the conclusion and the existing data is the expert's own assertion. *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (citing *General Electric v. Joyner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997)); *see Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) (holding that nothing in either *Daubert* or the Federal Rules of Evidence requires a District Court to admit opinion evidence which is connected only to existing data only by the *ipse dixit*[1] of the expert). To warrant admissibility, the expert's testimony must be derived from his/her scientific, technical, or otherwise specialized knowledge, and "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 113 S.Ct. at 2795-96. Moreover, the party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

An expert's experience, standing alone, is not a sufficient foundation to render reliable any conceivable opinion the expert may express; to the contrary, precedent plainly establishes that one may be considered an expert but still offer unreliable testimony. *U.S. v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). When the reliability of an expert's methodology is at issue, the

11th Circuit has instructed that: In deciding the question of reliability, the Supreme Court articulated a non-exhaustive list of relevant factors to consider: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Daubert, 509 U.S. at 593-94; McCorvey, 298 F.3d at 1256. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citations in original); *see also Crouch v. Teledyne Continental Motors, Inc.*, 2011 U.S.Dist.Lexis 70449, *4 (11th Cir. 2011); *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The 11th Circuit has further instructed that "[t]he proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care*, 582 F.3d 1227, 1232 (11th Cir. 2009)).

Mr. Ketchum may not rely on his experience alone to form opinions based solely on his own ipse dixit. This type of expert testimony is inadmissible under FRE 702. *See Kumho Tire*, 526 U.S. at 157; *Benfield*, 140 F.3d at 921. Moreover, "while an expert witness 'may testify as to his opinion on an ultimate issue of fact,' he 'may not testify as to his opinion regarding ultimate legal conclusions.' " *Mendel v. Royal Caribbean Cruises, Ltd.*, Case No. 10-23398-Civ-King at p. 3 (quoting *U.S. v. Delatorre*, 308 Fed.Appx.380, 383 (11th Cir. 2009) (emphasis added).

Another concept is the notion that certain matters are within the common knowledge and experience of the average person, and therefore, an expert's "specialized knowledge" is not necessary for the trier of fact. Expert testimony is not admissible if it is directed to "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v.*

*Metro North Commuter R.R.*, 882 F.2d 705, 708 (2nd Cir. 1989); See also FRE 702 Advisory

Committee's Note "there is no more certain test for determining when experts may be used than

the common sense inquiry whether the untrained laymen would be qualified to determine

intelligently and to the best possible degree the particular issue without enlightenment from those

having a specialized understanding of the subject involved in the dispute." *United States v.*

*Jobin*, 327 F.Supp.2d 310, 312 (D.Vt. 2004) (citing *Ladd*, Expert Testimony; 5 Vand. L. Rev.

414, 418 (1952)). An expert must testify to something more than what is "obvious to the lay

person" in order to be of any particular assistance to the jury. *Ancho v. Penn Tek Corp.*, 157 F.3d

512, 519 (7th Cir. 1998).

Expert testimony is not appropriate to present a theory within the

average juror's knowledge and which is within the understanding and experience of the average

person. *R.B. v. Ford Motor Company*, 2007 WL 2774157 *2 (N.D.Fla. 2007).

Proffered expert testimony generally will not help the trier of fact when it offers nothing more

than what lawyers for the parties can argue in closing arguments. Expert

testimony is admissible if it offers something "beyond the understanding and experience of the

average citizen. *Cooke v. Sheriff of Monroe County Florida*, 402 F.3d 1092, 1111 (11th Cir.

2005).

"The primary purpose of any *Daubert* inquiry is for the district court to determine

whether [the] expert, 'whether basing testimony upon professional studies or personal

experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field.' " *In re Traysol Products Liability Litigation*, 2001

U.S.Dist.Lexis 98524 (S.D.Fla. 2011). Apropos of this purpose, the Eleventh Circuit applies a 3-

part inquiry to determine the admissibility of expert testimony under FRE 702: (1)

[T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Quiet Tech. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003); *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

## A. *Expert Qualifications*

MR. Ketchum is not qualified to render an opinion that Ms. Noftz fee due to her left leg failing to support he as she approached the cooler. Under FRE 702, for a witness to qualify as an "expert," he/she must be possessed of such knowledge, skill, experience, training, or education that his/her opinion will serve to aid the trier of fact in understanding the evidence. *Jenkins v. U.S.*, 307 F.2d 637, 647 (D.C.Cir.1962); *Hughes v. Hemingway Transport, Inc.*, 539 F.Supp. 130, 133 (E.D.Penn. 1982); *Hartke v. McKelway*, 526 F.Supp. 97, 101 (D.D.C. 1981), *aff'd*, 707 F.2d 1544 (D.C.Cir. 1983), *cert. denied*, 464 U.S. 983, 104 S.Ct. 425 (1983). The determination as to whether a particular witness is qualified to testify in the capacity of an "expert," is within the sound discretion of the trial court. *U.S. v. Mitchell*, 954 F.2d 663, 666 (11th Cir. 1992); *Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 682 (3rd Cir. 1980); *Arnold v. Loose*, 352 F.2d 959, 962 (3rd Cir. 1965). A trial court's determination with respect to the admission or exclusion of expert testimony is to be sustained unless manifestly erroneous and a trial court's decision with respect to an expert witness' qualifications to testify will not be disturbed on review absent a clear abuse of discretion. *Salem v. United States Lines Co.*, 370 U.S. 31, 82 S.Ct. 1119 (1962), *reh'g denied*, 370 U.S. 965, 82 S.Ct. 1578 (1962); *Caisson Corp.*, 622 F.2d at 682; *Knight v. Otis Elevator Co.*, 596 F.2d 84, 87 (3rd Cir. 1979); *Browder*, 5 F.Supp.2d at

1281; *Hughes*, 539 F.Supp. at 133. "When determining whether an expert is qualified to render an opinion, the court should consider his full range of practical experience as well as academic or technical training. *Mendel*, Case No. 10-23398-Civ-King/McAliley at p. 8 (quoting *Superior Aluminum Alloys, LLC v. United States Fire Ins. Co.*, U.S.Dist.Lexis 46691, *13 (N.D.Ind.).

Based on his qualifications, as set forth within his CV, Mr. Ketchum is not qualified to testify as to the mechanism of Ms. Noftz's fall/injury, namely that *she fell due to her left leg failing to support her as she approached the cooler*. Further, as set forth herein below, Mr. Ketchum's opinion in this regard is based on nothing more that his looking at the CCTV video of the fall. The Jury will be in a position to view the footage and draw its own conclusions as to what caused Ms. Noftz to fall.

### B. *Reliability of Methodology*

Mr. Ketchum's opinions are based on pure speculation, and lack foundation, and as such are unreliable. The reliability of Mr. Ketchum's opinions are measured by the trustworthiness of his methodology and his application of the chosen methodology to an analysis of the facts and data of the case. Simply put, there is no methodology within any of  stated opinions. The law requires the party offering the expert to affirmatively establish the expert's qualifications and the soundness of his methodology. Defendant fails to prove Mr. Ketchum's methodology is sufficiently reliable to warrant admissibility as expert opinion testimony. Specifically, there is no evidence or argument that Mr. Ketchum's theories: (1) can be or have been tested; (2) have been or are susceptible to peer review and publication; (3) can be assigned a known or potential rate of error; and (4) are generally accepted in the scientific community. *Quiet Technology CD-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 13333, 1341 (11th Cir. 2003). Failure to satisfy these criteria

demonstrates the theories are speculative and unreliable. *Kallas v. Carnival Corp.*, 2009 WL 901507, *6 (S.D. Fla. 2009).

In this case, Mr. Ketchum conducted a site inspection on July 14, 2018, some twenty-one (21) months post-accident. At that time, Mr. Ketchum states that he, "observed no signs of moisture on the flooring in the area of Ms. Noftz fall of inside the cooler", and that "no signs of fluid stains or spills observed in the area of the fall". Mr. Ketchum, further stated that during his inspection he left the cooler door open for approximately 30 minutes, following which there were no indications of condensation detectable on the floor".

First and foremost, Mr. Ketchum opinion lacks foundation in that it presupposes that the conditions both inside and outside of the cooler were the same on the day of Ms. Noftz's fall as they were on the date of his inspection some twenty-one (21) months later. In fact, Ketchum ignores the uncontroverted testimony of both, Ms. Noftz that, when she stepped inside of the cooler in first retrieving the milk, the floor within the cooler was wet with a milky / discolored wetness / condensation. (**Noftz, p, 42-43)**, and the store's Manager, Ron Bennett who testified:

- That the milk is often delivered semi-frozen, so that as it defrosts in the rack, and in the crates kept in the back of the cooler, condensation would drip down onto the floor of the cooler. **(Bennett p. 98-99)**

- That there were often small leaks within the milk cartons which cause milk to drip down onto the floor **(Bennett, p. 55-56)**.

- That "we were not cleaning [the coolers good enough]". (p. 56) and that he failed to implement and adhere to CVS's policies requiring the coolers to be cleaned on a weekly basis. **(Bennett p. 137-138)**.

- Mr. Ketchum likewise ignores the stores history of being cited by the Florida Department of Agriculture and Consumer Services, Food Safety Division, for the following "FLOOR IN WALK IN COOLER HAS BUILD UP OF SPILLS AND DEBRIS". Attached as **Exhibit "B"**.

Specifically, Mr. Ketchum (1) does not test for, nor indicate what the temperature inside and outside of the cooler was on the day of Ms. Noftz fall, or on the date of his tests; (2) Mr. Ketchum does not indicate when the last time the cooler floor was cleaned prior to Ms. Noftz fall, or prior to his inspection; (3) Mr. Ketchum cannot indicate when the last time milk was delivered by Defendant's vendor, or stocked by its employees, whether the milk that was present on the date of his inspection was delivered frozen, or what the foot traffic was from inside the cooler to outside the cooler on the day of plaintiff's fall or before he conducted his inspection; (3) Mr. Ketchum, cannot say, nor does he state whether or not there was milk spillage on the floor of the cooler on the date of Plaintiff's fall, nor does he test whether, if such a milky substance was in fact on the cooler floor on that day, whether such spillage could be tracked onto the floor outside the cooler. **At most, Mr. Ketchum can testify as to the conditions of the floor on the date of his inspection of July 30, 2018**.

### C. *Assistance to the Trier of Fact*

Mr. Ketchum's opinions regarding the condition of the floor outside of the cooler on the date of Plaintiff's fall, are based solely on his review of the CCTV video, and as such invade the prevue of the jury. Specifically, Mr. Ketchum states in his report that, *"There is no indication from the surveillance video that the floor was wet at the time of Ms. Noftz's fall, and no other occupants, staff, of the emergency personnel appear to point out or indicate any concerns with the flooring"*.

As set forth above, Defendant bears the burden of demonstrating that Mr. Ketchum's opinions will be helpful to the trier of fact in order for Mr. Ketchum's opinions to be admissible in this case. *St. Cyr v. Flying J, Inc.*, 2008 U.S.Dist.Lexis 107653, *18 (M.D.Fla. 2008) ("the Eleventh Circuit follows the generally accepted rule that expert testimony is properly excluded

when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves"); *Frazier*, 387 F.3d at 1260. In other words, "[e]xpert testimony is [only] admissible if it concerns matters that are beyond the understanding of the average lay person." *U.S. v. Masferrer*, 367 F.Supp.2d 1365, 1373 (S.D.Fla. 2000).

Here, Mr. Ketchum's opinion that, *"there is no evidence of moist, or slippery conditions of the flooring in the area of Ms. Noftz's fall"*, are based on nothing more than his review of the CCTV footage which the Jury will have to review for itself -- he brings no science or reliable methodology to these observations. The holding in *Howard v. Cal Dive Int'l, Inc.*, 2011 U.S.Dist.Lexis 3496 (E.D. La. 2011) is apropos here. The court struck the maritime liability expert, holding "no expertise is required to assess the safety conditions on a vessel during a routine slip and fall accident." *Id*. at *11.    As discussed above, Plaintiff's incident was captured on CCTV. The Jury will be in a position to view the footage and draw its own conclusions. For the foregoing reasons, Plaintiff submits that Dr. Reginald Tall and Robert E. Ketchum testimony should be excluded.

### III: PLAINTIFF'S MOVES IN LIMINIE SEEKING TO PREVENT DEFENDANT FROM ARGUING THAT THE "NON-OCCURRENCE" OF PRIOR INCIDENTS, CLAIMS, ADJUSTMENTS, LAWSUITS, OR ACCIDENTS SOMEHOW MEANS THAT DEFENDANT WAS NOT NEGLIGENT

The Plaintiff, Peggy Noftz, individually, and through her undersigned attorneys, respectfully moves this Honorable Court to exclude from evidence, any testimony - documentary or otherwise - and to preclude any and all comments or arguments, and to instruct defense counsel and any and all defense witnesses to refrain from mentioning either directly or indirectly, in any manner whatsoever, anything concerning:   Any evidence of the "non-occurrence" or "infrequent/low level occurrence" of prior incidents, claims, adjustments, lawsuits, or accidents involving a slip and fall in the area in front of the walk-in cooler at the subject CVS store. Plaintiff

further requests that this Honorable Court enter an order *in limine,* because merely sustaining objections to such questions, comments and/or offers of proof, would not correct the overly prejudicial impact, and would instead, reinforce the prejudice in the eyes of the jury.

This matter arises out of a slip and fall at Defendant's CVS store located in Kissimmee, Florida. Specifically, Plaintiff's alleges to have slipped and fallen upon milky "wetness" located on the floor directly outside of the store's walk-in dairy/milk cooler. It is Plaintiff's theory of liability that: (1) Defendant CVS was negligent in the maintenance of the floor inside of its walk in cooler, which it knew of should have known was routinely wet from spillage from large quantities of milk stored upon rolling shelves, and on the floor inside of said cooler; (2) Defendant negligently placed or left its rolling milk rack too far inside the cooler, thereby requiring Plaintiff and others to step inside of the cooler and into the accumulation of milk product on the floor, which was then tracked in small quantities to the floor area just outside the cooler, creating a slippery/hazardous condition where Plaintiff and other customers would traverse; and (3) Defendant negligently failed to implement measures to prevent the tracking of quantities of milk product from the floor inside of the cooler to the floor just outside of the cooler by its employees and customers, or to warn its customers of the potentially slippery condition.

There are inherent unreliability concerns of "non-occurrence evidence" that render the evidence more prejudicial than probative, and therefor inadmissible. The fact that Defendant is "not aware of" or "has no record of" any prior events, does not meant that such incidents did not occur, and unreported incident could have occurred and not been reported.

*The appellate courts have imbued this Honorable Court with the sound discretion to decide whether to admit evidence of the occurrence or non-occurrence of prior accidents which have occurred under substantially similar conditions.* In *Jackson v. HI. Bouton, Co.,* 630 So.2d 1173,

1176 (Fla. 1st DCA 1994), the court explained that evidence of occurrence or non-occurrence of prior accidents is admissible only where the evidence pertains to the same type of equipment utilized under substantially similar conditions. *Id.* at 1176. It is an abuse of discretion for a court to admit evidence of part accidents or non-occurrences, where the advocating party fails to establish a similarity between the case at issue and the product's prior history. *Hogan v. Gable,* 30 So.3d 573, 575 (Fla. 1st DCA 2010).

In *Jackson,* the court held that the trial judge properly admitted evidence regarding the absence of other injuries occurring with a model of safety goggles that had "not" taken place before the *Jackson* plaintiff had suffered the eye injury that led to his claim. *Hogan,* 30 so.3d at 575 (*citing, Jackson,* 630 So.2d at 1176-77). The *Jackson* court stated that the non-occurrence of previous accidents went directly to the issue of the manufacturer's knowledge of the danger that was allegedly inherent in the safety goggles. *Id.* Although a bases for "substantially similar use" was not established in *Jackson,* the *Hogan* court noted that the safety goggles at issue in that case had remained unchanged.

In *Hogan v. Gable,* a surgeon volunteered to sit in a dunking booth at a fundraiser sponsored by his hospital and the American Cancer Society. The hospital had borrowed the dunking booth from the defendant for the event. While climbing inside the booth, the plaintiff lacerated his hand on an attached metal mesh and as a result of the injury, count no longer perform surgery. After a nine-day trial, the jury found no negligence on the defendant's behalf. *Id.* at 574. At trial, the defendant sought to offer evidence that there had been no complaints of injury related to the dunking booth since its construction in 1990. Plaintiff objected to the introduction of such non-occurrence evidence, arguing that defendant had not shown the booth was in its substantially similar condition since 1990, in light of testimony regarding modifications made to

the booth, which included the addition of wire mesh and a door sometime between 2000 and 2002. *Id.* The defendant argued that a showing of substantial similarity was not necessary because the purpose of offering the evidence was simply to show that defendant was not on notice of the dangerous condition of the dunking booth. The trial court agreed with defendant's argument.

The First District reversed. It found that unlike the *Jackson* safety glasses case, there was evidence that the dunking booth was modified from its original construction in its case, which had led to the plaintiff's injury. *Id.* at 575. Additionally, the court admonished that before the trial judge determined whether the non-occurrence evidence was admissible, the court failed to determine whether the dunking booth was in a substantially similar condition as it was in its previous use, which in and of itself, was an abuse of discretion. Because the lack of prior accidents became a focus of the trial, the appellate court felt that even further supported the need for reversal.

Interestingly, the First District retreated from its *Jackson* opinion to some extent, noting how it had previously relief on a "trend" toward treating the question of sufficiency of similarity of conditions, as primarily a matter for the trial court's discretion. It noted how it had a tendency to freely admit the evidence of the lack of prior accidents, together with evidence of variations and conditions as going to weight rather than admissibility. *Id.* at 575. The court wrote, that the "trend" to which it had referred, no longer reflects the current state of the law, and does not relieve the trial court of its obligation to make at least a threshold determination regarding the substantial similarity of any prior occurrences or non-occurrence. Applying *Hogan* here, it is clear that like the dunk tank owner in *Hogan,* the Defendant here is also unable to make the requisite showing of "substantial similarity" of the condition of the floor inside of the subject cooler and the conditions of the cooler on the day of this fall, then on other days. This Honorable Court should rule that Defendant is precluded from touting the lack of prior claims, adjustments,

lawsuits, accidents, etc., at any point in front of this jury at trial. *See also, Ashby Division of Consolidated Aluminum Corp. v. Dobkin,* 458 So.2d 335, 337 (Fla. 3rd DCA 1984) (Trial court property refused to allow homeowner defendant to testify about accident-free history of the ladder at issue because defendant failed to make a showing of substantial similarity of conditions); *Frazier v. Otis Elevator Co.,* 645 So.2d 100, 101 (Fla. 3rd DCA 1994) (The evidence of an occurrence or non-occurrence of prior accidents is admissible only if it pertains to the use of the *same* type of appliance or equipment under substantially similar conditions).

An absence of prior occurrences is not necessarily probative of anything, and at the very least may be more prejudicial than probative. While Florida law generally speaks to the admissibility of the "occurrence or non-occurrence" of accidents involving a particular product, the Supreme Court of Arizona in *Jones v. Pak-Mor Manufacturing Co.,* 700 P.2d 819, 824 (Az. 1985) provided important insight into the reason for why the absence of any type of claims history is not necessarily relevant or admissible. As the court wrote: There is little logic in the proposition that the trial court may admit evidence of other accidences but may never admit evidence of their absence. Nevertheless, experience teaches us that the problems of prejudice, inability of the opposing party to meet the evidence, and the danger of misleading the jury are substantial. We are aware, also, that defendant's "lack of notice" of injury does not establish the fact that no injuries had occurred, and that a "long history of good fortune" may not preclude the conclusion that the product was defective and unreasonably dangerous.

We believe that the true problem underlying the rejection of evidence of the lack of prior accidents is more evidentiary than substantive in nature. The essential nature of evidence of the absence of prior accidents is different from evidence of the existence of prior accidents. It is harder to prove that something did not happen that to prove that it did happen. When a witness

testifies that he knows of no prior accidents, there are two possible explanations. The first is that there have been no prior accidents; the second is that there have been prior accidents but the witness does not know about them. This problem, however, is not peculiar to safety-history evidence in product liability cases. It is, we believe, a variant of the "negative evidence" problem. The response of most courts to this problem has been that testimony that a witness did not see an event (knows of no prior accident) 'has, in and of itself no probative force sufficient to prove that the event did not occur.' Generally, courts hold that such negative evidence is inadmissible unless testimony that the witness did not see the event or does not know of it is coupled with further evidence that the witness was in such a position or has such sources of knowledge that if the event had occurred, he would have seen it or would have known about it. (Citations omitted).

Similarly, the Third Circuit in *Forest v. Beloit Corp.,* 424 F.3d 344, 355-63 (3rd Cir. 2005), also explained the shortcomings of the probative value of "non-occurrence" evidence, writing: To summarize the applicable analytical framework, in federal court the admissibility of evidence concerning an absence of prior accidents is governed by federal law... Such testimony ... by its very nature, raises significant concerns regarding unfair prejudice to the plaintiff, and these concerns are heightened in product liability cases ... In an effort to ascertain probative value and minimize undue prejudice, other courts considering such evidence have consistently insisted that the offering party lay a proper foundation. In most cases the required foundation has involved three element: (a) similarity - the defendant must show that the proffered testimony related to substantially identical products used in similar circumstances; (b) breadth - the defendant must provide the court with information concerning the number of prior units sold and the extent of prior use; and (c) awareness - the defendant must show that it would likely have known of prior accidents had they occurred. 424 F.3d at 358; *see also, Klonowski v. International*

*Armament Corp.,* 17 F.3d 992, 995-996 (7th Cir. 1994). Defendant, CVS cannot meet any of those foundational requirements here either. As such, Plaintiff also respectfully requests this court to grant this motion *in limine* pursuant to § 90.403.

WHEREFORE, the Plaintiff, individually, respectfully requests this Honorable Court to grant this Motion in Limine, together with such other and further relief is just and proper.

### *LOCAL RULE 7.1(A)(3) CERTIFICATION*

Undersigned counsel certifies that he has conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised herein; however, agreement could not be reached.

### <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that the forgoing document is being served this day on all counsel of record or pro se parties who have appeared in this matter via Electronic Mail to: Gavin Mackinnon, Esquire, KELLEY KRONENBERG, P.A. (Counsel for Defendant gmackinnon@kelleykronenberg.com), on this 30th day of November, 2018.

THE ROUSSO LAW FIRM
9350 South Dixie Highway, Suite 1520
Miami, Florida 33156
(305) 670-6669

By:     **/s/ *Darren J. Rousso, Esq.***
Darren J. Rousso, Esq.
Florida Bar No.: 0097410
Darren@roussolawfirm.com
SERVICE EMAIL:
Pleadings@roussolawfirm.com