UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:17cv1638-orl-31TBS

PEGGY NOFTZ,

     Plaintiff,

v.

HOLIDAY CVS, LLC, d/b/a
CVS/PHARMACY #476,
a Florida Corporation,

     Defendant.

_____/

### DEFENDANT'S (*DAUBERT*) MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DESIGNATED EXPERT WITNESS RUSSEL J. KENDZIOR AND INCORPORATED MEMORANDUM OF LAW

Defendant, HOLIDAY CVS, LLC ("CVS"), by and through its undersigned counsel, respectfully requests that this Court enter an Order excluding the testimony of Plaintiff's designated expert witness, Mr. Russel J. Kendzior, and as grounds in support, states as follows:

### Introduction and Statement of Facts

1.    In this lawsuit, Plaintiff alleges she fell upon a "wet and slippery floor" and suffered personal injuries while shopping in Defendant's CVS store.

2.    There is no question Plaintiff fell, rather the dispute is *why* Plaintiff fell. CVS denies its floor was "wet and slippery floor" but contends evidence support the fact Plaintiff fell when her leg gave out from under her as a result of her lifelong brittle bone disease.

3.    On May 30, 2018, Plaintiff disclosed her liability expert, Russel J. Kendzior, "to provide expert testimony regarding the trip and fall safety issues which existed at Defendant's establishment at the time, and in the location of Plaintiff's fall." (Doc. 23 at pg. 1).

4. Mr. Kendzior was retained on May 30, 2018, the same day he was disclosed as an expert (Ex. A at pg. 30, l. 7-10). He authored his expert report just less than four (4) weeks later, on June 25, 2018 (supplemented on June 29, 2018; *see* Exhibits B, and C respectively).

5. On February 27, 2019, Mr. Kendzior appeared for his deposition and provided sworn testimony in furtherance of his expert opinions.

6. Mr. Kendzior did not visit, inspect, or conduct any testing at the CVS store in question. Instead, his expert opinions were derived from photographs and surveillance video, written discovery responses, the deposition testimony of Plaintiff and former CVS store manager, Ron Bennett, and a State of Florida Department of Agriculture Inspection Report Dated December 26, 2015.

7. Mr. Kendzior's pertinent opinions were as follows:

    a. Plaintiff "slipped and fell on moisture located on the exterior VCT," i.e. the Vinyl Composite Tile located on the floor of the CVS store outside of the cooler. *See* Ex. C at pg. 1;

    b. CVS "should have inspected the area in and in front of their refrigerated displays more frequently as to ensure that they were safe and dry" and that "spilled milk may have been a chronic problem known by the Defendant which demanded their attention and remediation." *Id.* at pg. 2;

    c. Because of these conditions, CVS "should have used an appropriate type of floor matting" and "adequately warn[ed] Ms. Noftz as to the impending wet floor hazard." *Id.* Finally, he stated that, had CVS "addressed the above-mentioned walkway hazard prior to Ms. Noftz [sic] visit, it is unlikely that she would have slipped and fallen, and in-turn [sic] injured herself." *Id.*

8. Mr. Kendzior's purported conclusions are not based on sufficient facts, scientific evidence or data or upon on reliable principles and methods reliably applied to the facts and evidence, but rather upon flawed reasoning and speculation and should be excluded as unreliable.

<u>**Memorandum Of Law**</u>

**I.     The Court Should Employ Its Gatekeeping Function to Exclude Mr. Kendzior's Expert Opinions and Testimony.**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In accordance with the Supreme Court's benchmark rulings in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993) and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999), "Rule 702 compels district courts to perform a 'gatekeeping' role concerning the admissibility of expert testimony." *Seamon v. Remington Arms Co., LLC,* 813 F.3d 983, 988 (11th Cir. 2016).

In exercising this role:

> Courts must consider whether: (1) the expert is qualified to testify **<u>competently</u>** regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently **<u>reliable</u>** as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony **<u>assists</u>** the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (*citing City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998)); *see also United States v. Frazier,* 387 F. 3d 1244, 1260 (11th Cir.2004) (emphasis added).

Mr. Kendzior's expert opinions fail the second prong, due to the unreliable methodology he used to reach those opinions. The test of reliability addresses "whether the reasoning or

methodology underlying the testimony is scientifically valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In conducting this inquiry, the Court may consider "(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community." *McDowell v. Brown,* 392 F.3d 1283, 1298 (11th Cir.2004) (citing *Daubert*, 509 U.S. at 593–94). It should be noted that "[t]his list is not exhaustive" and "the district court may take other relevant factors into account." *Seamon,* 813 F.3d at 988. "In assessing reliability, the court must focus 'solely on principles and methodology, not on the conclusions that they generate.'" *Id.* (*citing Daubert*, 509 U.S. at 595).

"To fulfill its gatekeeping function under Rule 702, a district court must not simply 'tak[e] the expert's word for it.'" *Edwards v. Shanley,* 580 Fed. Appx. 816, 823 (11th Cir. 2014). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Id.* (*citing Frazier,* 387 F.3d at 1261). Applying these principles to Mr. Kendzior's methodology in the present case, his conclusions are not based on sufficient facts or data, or on reliable principles and methods reliably applied to the facts of the case, and thus his testimony and opinions should be excluded.

## II.     Mr. Kendzior's Methodology Has Been Excluded By Federal Courts Due to Its Lack of Reliability.

Mr. Kendzior was excluded as an expert previously by Federal Courts and under similar circumstances presented herein.  Specifically, the Court found his "conclusions are not based on sufficient facts or data or on reliable principles and methods reliably applied to the facts of the case." *See* Ex D at pg. 9 (*Alsip v. Wal-Mart Stores E., LP,* Case No. 1:14-cv-00476-CG-N, S.D.

Ala. (Order November 12, 2015)), *affirmed by Alsip v. Wal-Mart Stores E., LP,* 658 Fed. Appx. 944, 948 (11th Cir. 2016); *see also* Ex. G.

In *Alsip* the 11th Circuit Court affirmed the district court's order excluding Mr. Kendzior in part because his own testimony suggested "that his opinion is based on flawed reasoning and speculation." *Id.* Both the Southern District of Alabama and the 11th Circuit Court found Mr. Kendzior's opinions "to be the product of an **unreliable methodology**." *Id.* at 948 (emphasis added). Mr. Kendzior's opinions and testimony presented herein are likewise based on "flawed reasoning and speculation" (*id.*), and the Court should exclude his testimony.

*Alsip* also involved the alleged slip and fall of a customer at a retail store. Plaintiff therein retained Mr. Kendzior to opine on the slip resistance of crosswalk striping. *Id.* at 945. Mr. Kendizior's expert opinions were primarily based on his review of deposition testimony, surveillance video of the accident, photographs of the parking lot and crosswalk, and pertinent industry standards and guidelines, and as in this case, he failed to performed a site inspection or perform any testing. *Id.* at 945-946. The District Court found this to be a fundamental flaw in his methodology, stating that "his analysis did not involve any testing" and "while Kendzior concluded that the surface was unreasonably safe, he admits that he cannot tell from his analysis how slip resistant the surface was." Ex. D at pg. 8; *see also id.* at pg. 9. As a result, "his opinion is essentially that because Plaintiff fell, it must have been slippery," but, as he himself admitted, "no matter what the level of slip-resistance '[a]nybody can fall on anything." *Id.* Ultimately, the District Court concluded plaintiff failed to make the showing that Mr. Kendzior's "method of determining slip-resistance resulted in a reliable determination as to how slip-resistant the surface in question was." *Id.*

**III.    The Court Should Exclude Mr. Kendzior's Purported Expert Opinions and Testimony As They Result from Unreliable Methodology.**

As in *Alsip*, Mr. Kendzior's conclusions provided in this matter are not based on reliable methodologies.  Mr. Kendzior performed no inspections or testing of CVS's floor or cooler, having never visited the store. Ex. A at pg. 14, l. 8-9.  Mr. Kendzior's opinions provided in this case are contrived solely to try to resist the same exclusion that resulted in the *Alsip* case. At deposition, he was asked the following:

> 5       Q.  Mr. Kendzior, **do you agree that the best way to**
> 6    **test the -- to determine, rather, the slip resistance of**
> 7    **a surface is to perform testing on that surface**?
> 8       A.  You could.  That's one way.
> 9       Q.  Okay.  I'm asking you if it's the best way?
> 10      A.  There's a lot of ways.  **I don't know if there's a**
> 11    **-- that's one way**.

Ex. A at pg. 5, l. 5-11 (emphasis added). This testimony directly contradicts his testimony in the *Alsip* case, which the Court cited because "Kendzior testified that the best way to determine whether there is aggregate in the paint **would have been to test it** with a tribometer, which would measure the coefficient of friction for the surface." Ex. A at pg. 6 (Emphasis added).  He conducted no such testing in *either* that case or the case before this Court, which is fatal to any suggestion of his conclusions being based on reliable methodology, capable of testing.

Further, in the present case, Mr. Kendzior rendered opinions without having any data as to the slip resistance of the floor in question. In fact, he did not even know how old the floor was at the time of the incident:

> 17      Q.  Right, but what happens to its slip resistance?
> 18    Does it increase or decrease in your opinion?
> 19      A.  It could be either.  Depends.
> 20      Q.  All right.  In this case what happened?
> 21      A.  **I don't know.  I don't have any coefficient of**
> 22    **friction slip resistant information**.
> 23      Q.  How old was the floor in the CVS store?
> 24      A.  **I don't know how old it was**.

Ex. A at pg. 9, l. 17-24 (emphasis added). He further admitted to not knowing the degree to which the floor was worn. *Id.* at pg. 10, l. 2-6.

Mr. Kendzior also admitted at deposition that due to his failure to inspect or test the floor in question, he lacks any information as to the temperature and moisture levels which would directly affect the potential for condensation in that location, which is substantially relevant as Plaintiff alleges an accumulation of condensation inside the cooler may have caused or contributed to her fall. *See* Ex. A at pg. 79, l. 6 – pg. 80., l. 1. He likewise admitted he does not have any measurements of the floor or the slope of the floor, and that he only "presumes" that a floor drain would be present. *Id.* at pg. 86., l. 25 – pg. 89., l. 5. He further does not know how big the floor in the cooler is. *Id.* at pg. 92, l. 11 – 19. These admissions highlight the fundamentally speculative nature upon which Mr. Kendzior's ultimate opinions rest.

Instead, Mr. Kendzior relied upon on certain photographs which he admits to not knowing when all they were taken. *Id.* at pg. 45, l. 3-17, and that he is not certain what the pictures themselves depict:

> 23    A.  Well, I'm about to answer that.  This **appears to**
> 24  **be some form of tile or area of wear on tile**.  So,
> 25  there's a combination.  **There's different colorations of**
> 1  **the tile indicative of the surface, indicative of either**
> 2  **a residue or on the light portion, or dirt on the dark**
> 3  **portion.  So, <u>I don't know if the dark portion is dirt</u>**
> 4  **<u>and that's regular color, or the white portion is</u>**
> 5  **<u>residue</u>**.
> 6    Q.  Or worn tile?
> 7    A.  Or a combination, right.
> 8    Q.  And, again, just to reiterate the fact, **you've**
> 9  **not personally observed or taken a look at the cooler or**
> 10  **any aspect of the store**?
> 11    A.  **That's correct.**

Ex. A at pg. 65, l. 23 – pg. 66, l. 11 (emphasis added).

Mr. Kendzior claimed his conclusions were not compromised by the failure to inspect or perform any testing, because he claims he "…was retained a very long time after this woman's

fall,[1] if you go to the store looking for any type of evidence, [it] would be misleading, potentially misleading" because he would not be "looking at the same condition that existed at the time of the event. That's the key." Ex. A at pg. 12 l. 1-8.

Despite claiming an inspection in June, 2018 would lead to "misleading" information, he stated he indeed wanted to go to the CVS store the day prior to his deposition on February 27, 2019 (*id.* at pg. 14, l. 16-17; pg. 18 l. 18-20).[2] Using Mr. Kendzior's logic, the condition of the store in February 2018 would have been even more "misleading" than it would have been in June of 2018 as it was *even further removed in time* from the date of incident, yet still claims he wanted to conduct an inspection.

Mr. Kendzior testified he wanted to visit the store in February of 2018 because he lacked data regarding the size and measurements of the floor, information he agreed was "important." *Id.* at pg. 92, l. 11-19. Despite the importance of such information, Mr. Kendzior rendered his opinions and his expert report without the benefit of any such data. *Id.* at pg. 92, l. 17 – 24. A site inspection would have allowed Mr. Kendzior's opinions to be purportedly based upon some tangible reference to the conditions Plaintiff encountered at the store and some measurement of testing, rather than purely being based on speculation and conjecture. Instead, Mr. Kendzior relies almost exclusively upon photographs for which he testified not knowing when some were taken and an Inspection Report issued ten (10) months prior for which no foundation, context or verification was provided or explained or even inquired into. Mr. Kendzior's failure to support his opinions with any firsthand knowledge, by way of an inspection, or testing of any kind, is a product of his and Plaintiff's failure to properly prepare and his dismissal of such is superficial to

---

[1] Mr. Kendzior was retained by Plaintiff on May 30, 2018 (Ex. A at pg. 30, l. 7-10), the same day Plaintiff disclosed him as an expert and less that one month from when he issued his initial June 25, 2018 expert report. This was also 19 months after the October 30, 2016 incident.

[2] Mr. Kendzior first sought to inspect the CVS store in the question in February, 2019, long after the deadlines for both fact and expert discovery set by the Court.

the inescapable conclusion that the methods he did employ to reach his conclusions were fundamentally unreliable.

**IV.    Mr. Kendzior's Opinions Are Unreliable As He Employed Flawed Analysis of the Store Inspection Evidence.**

Further undermining Kendzior's purported conclusions is the fact he misused and misappropriated what evidence he did consider to reach his final opinions. He contends a site inspection was not necessary because it would have been remote in time from the subject incident and, therefore, "potentially misleading," (*see discussion supra*).  Despite this, relied in significant part on a Florida Department of Agriculture inspection report performed on December 28, 2015, 10 months *prior* to the date of incident.[3] *See* Ex. E, *see also* Ex. B and Ex. C.

This report is unsubstantiated, unexplained, and an unverified record of a purported inspection from a single day ten (10) months prior to Plaintiff's incident. No efforts were made to provide any context, foundation or relation to associate this report to the conditions Plaintiff alleges in this lawsuit.  Thus, Mr. Kendzior's methodology rejects the potential benefit of his own eye-witness inspection and any testing for a hearsay document of an inspection confucted ten (10) months prior.  From this report he renders the opinion the CVS store had a "chronic" problem with moisture on the surface of its cooler. *See* Ex. A at pg. 74, l. 5 – 15.  Chronic is defined as: continuing or occurring again and again for a long time; always present or encountered.[4] We can assume that Plaintiff intends to have Mr. Kendzior testify that CVS had a chronic problem with maintaining its premises the result being that it was dangerous for all customers, at all times, including Plaintiff, because this accumulated moisture and/or spilled milk was present again and again, for a long time; was always present or encountered.

---

[3] There was an errant reference at deposition to this report being dated December 20, 2015. *See* Ex. A at pg. 89, l. 8-9. There is no evidence of a second such inspection or report pertaining to this CVS store.
[4] *See* Meriam-Webster's Dictionary

Mr. Kendzior amazingly opined the Incident Report reflects "an identical condition" present in the store at the time of Plaintiff's fall. *Id.* at pg. 89, l. 23 – pg. 90, l. 2, and that he "presumed" to know the author of the report's intent in writing the report (*see id.* at pg. 90, l. 18-23; pg. 91, l. 15-17). There is no evidence to provide foundation or context to this report and the presumed opinions derived thereof. *Id.* at pg. 91, l. 18 – 20; pg. 92, l. 25 – pg. 93., l. 2. He acknowledge to not knowing whether there was any follow-up to the report or whether the conditions stated therein had been remedied. *Id.* at pg. 95, l. 24 – pg. 96, l. 2. There is simply no reliable or accepted scientific methodology for such an unfounded extrapolation or for otherwise basing crucial expert opinions on presumptions unsupported by any evidence, let alone reliable evidence. He is simply making up pseudo-facts that are not in existence in this case. Without any foundation or context, the Inspection Report is a hearsay document which adds nothing in furtherance of any opinions regarding the conditions of the CVS store or floor at the time of Plaintiff's fall, yet this report the basis of Mr. Kendzior's expert opinion as to CVS's liability.

Opinions based upon rote speculation should not be permitted given the complete lack of reliable evidentiary support.

Next, Mr. Kendzior improperly construes the testimony of Mr. Bennett, CVS' store manager at the time of the alleged incident, by falsely claiming Mr. Bennett testified "there was [sic] no inspections that he recalled ever being done." Ex A at pg. 75, 1. 4 – 10. Mr. Bennett, however, indicated the opposite. When asked about inspections of the store, he testified that CVS employees were "walking the store constantly."[5] Ex. F at pg. 92., l. 2-13. As to the specific cooler door area where Plaintiff alleges she stepped, Mr. Bennett testified:

6        Q        And so as a result of this being an

---

[5] Mr. Bennett did acknowledge that there will be times when "an hour can go by" where employees are not walking the aisle (Ex. F at pg. 93, l. 4-13), but this hardly a basis upon which any expert or lay person could claim as Mr. Kendzior does that "there was no inspections that [Mr. Bennett] recalled ever being done." Ex. A at pg. 75, l. 9-10.

> 7  entrance into the cooler, do you think then it would be
> 8  inspected probably more often than any of the other
> 9  cooler areas since it was a access point?
> 10       A    I -- I don't know if "inspected" would be
> 11  the word.   I mean, we're definitely -- **if something's**
> 12  **going wrong there, we're going to know** it versus other
> 13  areas because we're going through there.   You know, so if
> 14  there's a leak or if there's a, you know, damage or
> 15  something of that nature, **we're going through there more**
> 16  **than other areas**.

Ex. F pg. 113, l. 6 – 16 (emphasis added). Not only did Mr. Bennett *not* claim the cooler area was never inspected, he actually testified that the area *was* visually inspected more than other areas of the store by virtue of the fact that CVS employees pass through that area more frequently than other areas of the store.

Perhaps the most fatal flaw of Mr. Kendzior's errant claims regarding Mr. Bennett, is the fact that Mr. Bennett testified at deposition that he was at the store and responded to Plaintiff immediately after her fall and inspected the area of the floor where Plaintiff fell and that he did not observe any problems with the floor (Ex. F at pg. 84, l. 9 – pg. 83, l. 16), let alone the supposed "chronic" problems that Mr. Kendzior opines exist. Mr. Bennett specifically testified "that floor was not wet." *Id.* at pg. 84, l. 16.

Mr. Bennett's actual testimony conflicts with what testimony Mr. Kendzior claims Mr. Bennett said and for which Mr. Kendzior relies upon to reach his opinions. Mr. Kendzior materially mischaracterizes Mr. Bennett's testimony to opine that CVS never inspected the area of floor in question, when in fact the testimony was the exact opposite.

The result is that Mr. Kendzior's opinions are based upon flawed understanding or purposeful misunderstanding of testimony. Reliance upon photos and an Inspection Report prepared 10 months before the incident and for which there is no foundation or context, and selective, out of context testimony, while ignoring unfavorable testimony is the essence of a flawed methodology and unreliable foundation.

Mr. Kendzior's opinions represent unscientific speculation and, therefore, fail the reliability prong for providing expert testimony. Had he employed reliable methodology, the evidence stated above suggests that he would have reached much different conclusions.

## Conclusion

Mr. Kendzior's purported opinions and conclusions are not based on sufficient facts or data or on reliable principles and methods reliably applied to the facts of the case, and thus they should be excluded pursuant to the Court's gatekeeping authority under Rule of Evidence 702. This Court should likewise follow that of federal district and the 11th Circuit courts who found Mr. Kendzior's failure to perform inspection and testing evidence of a lack of reliability of his methods. His conclusions were reached despite his own admissions of a lack of testing and important data concerning the CVS store in question that would allow other experts to test Mr. Kendzior's conclusions, and were based on a false and misleading characterization of the testimony of a witness who has first-hand knowledge of the conditions inside of the store at the time of the alleged incident. For the reasons stated herein, Mr. Kendzior's conclusions and opinions, which were reached using unreliable methodology, should be excluded.

WHEREFORE, Defendant respectfully requests that the Court grant this Motion and enter an Order excluding the testimony of Russel J. Kendzior, and further requests this Court to instruct Plaintiff, her counsel, and any and all of his witnesses not to make any references to the fact that this Motion has been filed, granted, or denied, and for other such relief that this Court deems necessary and just.

## Certificate of Compliance with Local Rule 3.01(g)

Undersigned counsel for CVS certifies that the parties spoke by telephone on April 11, 2019, regarding the relief requested herein, and Darren Rousso, Esq., counsel for Plaintiff, indicated that Plaintiff does not agree with the relief sought herein.

**Certificate of Service**

WE HEREBY CERTIFY that the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system. I also certify that the forgoing document is being served this day on all counsel of record or pro se parties who have appeared in this matter via transmission of electronic mail to: **Darren Rousso, Esquire, The Rousso Law Firm (Counsel for Plaintiff)(roussolaw@yahoo.com),** on this 12th day of April, 2019.

*/s/ R. Gavin Mackinnon*

R. Gavin Mackinnon, Esquire

Florida Bar No. 0227810

Michael J. Rigelsky, Esquire

Florida Bar No. 126168

KELLEY KRONENBERG, P.A.

Attorneys for Defendant, Holiday CVS, LLC

20 North Orange Avenue, Suite 1207

Orlando, FL 32801

Phone: (407) 648-9450

Fax: (407) 648-4167

Primary Email: gmackinnon@kelleykronenberg.com

Secondary Email: mrigelsky@kelleykronenberg.com
