## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DUANE ALSIP as Administrator** | ) |
| **and Personal Representative of** | ) |
| **the Estate of Emma Alsip,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **CIVIL ACTION NO. 14-476-CG-M** |
| | ) |
| **WAL-MART STORES EAST, LP** | ) |
| **and SOVEREIGN COMMERCIAL** | ) |
| **MAINTENANCE COMPANY,** | ) |
| **LLC.,** | ) |
| | |
| **Defendants.** | |

### ORDER

This matter is before the court on the motion of Wal-Mart Stores East, L.P.

("Wal-Mart") to exclude the expert testimony of Russell Kendzior (Doc. 71),

Plaintiff's opposition thereto (Doc. 81) and Wal-Mart's reply (Doc. 88). For the

reasons explained below, the court finds that Wal-Mart's motion should be granted.

### BACKGROUND

This case arises from a slip and fall that occurred on Wal-Mart's premises on

April 23, 2013. On that date, Emma Alsip slipped, during rainy conditions, on the

yellow painted crosswalk near the entrance to a Wal-Mart Super Store in Foley,

Alabama. (Doc. 44, ¶¶ 12-14). Plaintiff alleges that the painted crosswalks were

negligently and/or wantonly maintained so that it was not reasonably safe for

business invitees. (Doc. 44 ¶ 16). More specifically, Plaintiff asserts that the





painted area had not been painted recently, or did not contain an anti-slip substance in the paint. (Doc. 44, ¶ 17). Plaintiff claims that Defendants failed to apply a proper paint mixture because it did not include an abrasive additive to make the paint slip resistant when wet, thereby creating an unreasonably safe walkway. (Doc. 44, ¶¶ 20, 24).

Plaintiff's expert, Russell Kendzior, opines that: the painted striped walkway that Ms. Alsip slipped and fell on "represented an unreasonably dangerous condition" and "was not in compliance with industry standards for being slip resistant because the paint did not contain an appropriate aggregate material, or the aggregate material had worn off in the three years since the lot was painted." (Doc. 82-2, p. 5; Doc. 82-1, ¶ 19). Defendant Wal-Mart moves to exclude Kendzior's expert testimony on the basis that his opinions are not sufficiently based on reliable facts, methods, procedures, or testing results such that they could be deemed either relevant or reliable under <u>Daubert</u>.

## LAW

The United States Supreme Court, in <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993), found that scientific expert testimony is admissible only if the proffered testimony is both relevant and reliable. "[A] district court judge is to act as a 'gatekeeper' for expert testimony, only admitting such testimony after receiving satisfactory evidence of its reliability." <u>Dhillon v. Crown Controls Corporation</u>, 269 F.3d 865, 869 (7th Cir. 2001); see also <u>U.S. v. Majors</u>, 196 F.3d 1206, 1215 (11th Cir. 1999). However, "it is not the role of the district court to

make ultimate conclusions as to the persuasiveness of the proffered evidence."

Quiet Technology DC–8, Inc. v. Hurel–Dubois UK Ltd., 326 F.3d 1333, 1341 (11th

Cir. 2003). "[A] district court's gatekeeper role under *Daubert* is not intended to

supplant the adversary system or the role of the jury." Id. (citing Maiz v. Virani, 253

F.3d 641, 666 (11th Cir. 2001)).  "Quite the contrary, '[v]igorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence.'

" Id. (quoting Daubert, 509 U.S. at 596, 113 S.Ct. at 2798).

> Rule 702 of the Federal Rules of Evidence provides:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  The rule compels district courts to "conduct an exacting analysis

of the foundations of the expert opinions to ensure they meet the standards for

admissibility under Rule 702." United States v. Abreu, 406 F.3d 1304, 1306 (11th

Cir.2005) (quoting United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir.2004)

(internal quotation marks omitted)).  Accordingly, under Rule 702, "this Court has

an obligation to screen expert testimony to ensure it stems from a reliable

methodology, sufficient factual basis, and reliable application of the methodology to the facts." Whatley v. Merit Distribution Services, 166 F.Supp.2d 1350, 1353 (S.D. Ala. 2001) (citations omitted).

The Eleventh Circuit requires district courts to engage in a "rigorous three-part inquiry" for assessing the admissibility of expert testimony under Rule 702:

> Trial courts must consider whether: "(1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir.2004) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1999)). These requirements are known as the "qualifications," "reliability," and "helpfulness" prongs. See id. "[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." Allison v. McGhan Medical Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994)); see also Whatley, 166 F.Supp.2d at1354 ("the proponent of the expert testimony has the burden to establish by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied.")(citations omitted). Factors that may be relevant include:

> (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) in the case of a particular ... technique, the known or

4

potential rate of error, and (4) whether the theory or technique is generally accepted by the relevant ... community.

Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010)

(internal quotation marks and alterations omitted).  Additional factors that may be

taken into account by a district court include:

> (1) Whether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying;
>
> (2) Whether the expert has unjustifiably extrapolated from an accepted to an unfounded conclusion;
>
> (3) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting;
>
> (4) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

FED. R. EVID. 702 advisory committee's note to 2000 amendments (internal citations

omitted).

## DISCUSSION

In the instant case, Wal-Mart objects to the expert's testimony on the basis

that it is unreliable.  Mr. Kendzior states that his opinion is based on the

depositions, photographs and documents found in this case as well as the industry

standards he repeatedly cited in his expert report. (Doc. 82-1, ¶ 19).  Wal-Mart

points out that Kendzior did no actual testing of the site and in fact never even

visited the site to observe or feel the surface in question.

Kendzior states that based on "his extensive experience with the testing of

painting products, it is patently obvious from the photographs taken soon after the

accident what type of paint was used for the striping and whether or not it

contained the aggregate material necessary to make the paint slip resistant." (Doc.

82-1, ¶ 20).  Mr. Kendzior explained his conclusion as follows:

> As I explained in my deposition, the pictures demonstrate that the
> paint used in the parking lot was your typical line paint – either an
> enamel or epoxy type.  One can see this due to the color and the
> appearance of the paint.  The photo also shows that the paint was
> durable and was able to last a long time, since it had been almost three
> years since Wal-Mart had last painted the lot.  If this line paint had
> contained aggregate, the paint would show a change in the gloss.  One
> would actually see little crystals in the material.  Aggregate particles
> are readily visible and would have clearly shown in the pictures had
> they been present.

(Doc. 52-1, p. 6).  Kendzior further explained that he was not retained by Plaintiff

until over a year after the incident and that testing done years after the accident

would not indicate the state of the surface at the time of the accident. (Doc. 52-1, ¶

21).

At his deposition, Kendzior testified that the best way to determine whether

there is aggregate in the paint would have been to test it with a tribometer, which

would measure the coefficient of friction for the surface. (Doc. 72-1, pp. 45-46).  The

coefficient of friction is a measurement of how slippery a walkway is. (Doc. 72-1, p.

72).  Kendzior explained that the tribometer result would not tell you if there was

aggregate in the paint, but rather whether the surface was sufficiently slip-

resistant. (Doc. 72-1, pp. 46).  The measurements obtained from an appropriate

tribometer would definitively show what traction range a particular painted surface

would fall into. (Doc. 72-1, p. 73). Whether aggregate was applied can be seen with a

visual inspection. (Doc. 72-1, pp. 46-47).  Mr. Kendzior admitted that seeing the

surface in person would be better than looking at photographs. (Doc. 72-1, p. 47). According to Kendzior, he had never been requested to visit the site. (Doc. 72-1, p. 49).

Kendzior explained the specifics of industry standards for slip-resistance for walking and/or working surfaces, using a tribometer to take readings to determine the measurable risk. (Doc. 72-1, pp. 58-64). If the coefficient of friction on the day that Plaintiff fell was .6 or greater wet, then Kendzior would be of the opinion that the surface was a "high-traction" surface that was slip-resistant and would minimize the likelihood of a slip and fall. (Doc. 72-1, pp. 65-66). Kendzior does not know what the coefficient of friction was for the surface in question and cannot say what the actual slip-resistance of that area is or whether it would qualify as "high traction." (Doc. 72-1, pp. 52-54). He also does not know if the area would have become more or less slip resistant in the passage of time since Plaintiff fell. (Doc. 72-1, pp. 76-77). However, Kendzior admitted that generally speaking most painted asphalt surfaces would get slipperier over time from the weathering process and wear and tear. (Doc. 72-1, p. 79).

Kendzior concluded that the surface was not sufficiently slip-resistant because the photos indicate that there was no aggregate in the paint and because Plaintiff did in fact fall. (Doc. 72-1, pp. 81-82). Kendzior agreed that adding aggregate is not the only means of making a surface slip-resistant, cross cut grooving, texturing and other means can be utilized. (Doc. 72-1, p. 80). The surface could still meet the "high-traction" requirement for a slip-resistant surface without

the addition of aggregate to the paint. (Doc. 72-1, p. 82). Mr. Kendzior stated that he does not like to use the terms "safe and unsafe" because "[a]nybody can fall on anything." (Doc. 72-1, p. 66).

While Kendzior is experienced in testing for slip-resistance and is knowledgeable about what coefficient measurements are sufficient to demonstrate that the risk of slip and falls has been minimized, his analysis did not involve any testing. Moreover, while Kendzior concluded that the surface was unreasonably safe, he admits that he cannot tell from his analysis how slip-resistant the surface was. He merely determined from looking at photographs that there was no aggregate in the painted areas depicted in the photographs and that since Plaintiff did in fact fall, it must not have been sufficiently slip-resistant. However, given that Kendzior admitted that aggregate in the paint is only one factor that impacts slip-resistance and that the surface could be sufficiently slip-resistant without aggregate, his opinion is essentially that because Plaintiff fell, it must have been slippery. But, as Kendzior admitted, no matter what the level of slip-resistance "[a]nybody can fall on anything."

While there has been no real argument that Kendzior is not experienced or knowledgeable on the subject of slip-resistance, "a district court must not simply tak[e] the expert's word for it." Edwards v. Shanley, 2014 WL 4747186, *6 (11th Cir. Sept. 25, 2014) (citation and internal quotations omitted). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." Id.

(quoting United States v. Frazier, 387 F.3d 1244, 1258, 1261 (11th Cir. 2004) (en

banc)). Here, the expert has performed no tests and the data he reviewed is not, by

his own admissions, sufficient to reach his stated conclusion. Kendzior's general

expert knowledge may be helpful to explain to the jury the factors and

circumstances that impact the slip-resistance of a surface. However, Plaintiff has

not shown that his method of determining slip-resistance resulted in a reliable

determination as to how slip-resistant the surface in question was. Even assuming

Kendzior's analysis was sufficient to determine that there was no aggregate in the

painted crosswalk, that fact is not sufficient information from which a reliable

conclusion can be reached as to how slip-resistance the surface was.

Plaintiff has not demonstrated that the expert's theory or technique has been

tested or subjected to peer review or is generally accepted. Kendzior's testimony

indicated that there are reliable principles and methods that can be used to

determine slip-resistance, but that he did not use those methods and that even

those methods may not be reliable if performed more than a year after the time of

the accident. In other words, according to Kendzior, there is no reliable way of

determining whether the area in question was sufficiently slip-resistant. The only

way to have made a reliable determination would have been to test the surface

within a short time after the accident, which was not done here. In light of all of

the above, the Court concludes that Kendzior's conclusions are not based on

sufficient facts or data or on reliable principles and methods reliably applied to the

facts of the case.

## CONCLUSION

For the reasons stated above, the motion of Wal-Mart Stores East, L.P. to exclude the expert testimony of Russell Kendzior (Doc. 71), is **GRANTED.**

**DONE** and **ORDERED** this 12th day of November, 2015.


/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE