# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PEGGY NOFTZ,**

      **Plaintiff,**

**v.**                                                                                           **Case No: 6:17-cv-1638-Orl-31TBS**

**HOLIDAY CVS LLC,**

      **Defendant.**

## ORDER

This matter comes before the Court without a hearing on two motions to exclude expert testimony (Doc. 88, 89) filed by the Plaintiff, Peggy Noftz (henceforth, "Noftz"), a similar motion (Doc. 90) filed by the Defendant, Holiday CVS LLC ( "Holiday CVS") and a Renewed Omnibus Motion in Limine (Doc. 94) filed by Noftz. In the first two motions, Noftz seeks to exclude certain opinions to be offered by two of Defendant's experts, Robert Ketchum ("Ketchum") and Reginald Tall ("Tall"). In its motion, Holiday CVS seeks to exclude testimony to be offered by Plaintiff's expert, Russell Kendzior ("Kendzior"). Finally, Noftz's omnibus motion covers a number of evidentiary issues, including the testimony of Ketchum and Tall.

### I. Background

On October 30, 2016, Noftz was shopping at a CVS drugstore in Saint Cloud. (Doc. 2 at 2). Noftz picked up a carton of milk from a walk-in cooler[1] and walked away; a few minutes

---

[1] Despite it being a walk-in cooler, shoppers were not required to walk inside the cooler to get milk. Based on stills taken from the store's closed-circuit video, at the time of the accident a metal rack full of milk cartons was positioned perhaps two feet inside the cooler's glass door. (Doc. 88 at 28). Thus, shoppers could lean in and retrieve milk or could step just inside the cooler to do so.

later, she returned to the area in front of the cooler door, where she fell and suffered a serious injury to her left leg. (Doc. 2 at 2). Noftz contends that her fall was caused by negligence on the part of the Defendant. In general terms, she contends that moisture on the floor inside the cooler was tracked outside of it by other shoppers and by employees, making the floor just outside the cooler door wet and slippery, causing her right foot to slip out from under her. (Doc. 2 at 2; Doc. 88 at 1-2). CVS disputes this. Noftz has a medical condition called osteogenesis imperfecta, which causes her bones to be more brittle than those of the average person. CVS contends that, rather than her right foot slipping on some substance on the tile floor, Noftz's left leg simply buckled beneath her, resulting in the fall. (Doc. 92 at 1-2).

**II.   Legal Standards**

The admissibility of testimony by expert witnesses is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrill Dow*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court admonished trial courts to fulfill a gatekeeping role in the presentation of expert testimony. The *Daubert* court identified four factors that district courts should consider when assessing the reliability of an expert's testimony: (1) whether the expert's methodology has been

tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *See id.* at 593-94, 113 S.Ct. at 2797. At the same time, the Supreme Court has emphasized that these factors are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999).

From the reference to "scientific knowledge" and the condition that it "will assist the trier of fact," the Supreme Court, in *Daubert*, interpreted Rule 702 to require that expert testimony on scientific matters have the following inter-connected attributes:

> • that it be "scientific," having a "grounding in the methods and procedures of science";
>
> • that it bear the hallmarks of "knowledge," which "connotes more than subjective belief or unsupported speculation"; and
>
> • that it "assist the trier of fact" or "fit" a matter at issue, meaning that it expresses scientific knowledge as to the proposition for which it is offered.

*Daubert* at 590-91, 113 S.Ct. at 2795 (1993). Expert testimony need not purport to reveal a known certainty, but it must be derived by the "scientific method," which requires that it be supported by appropriate validation based on what is known. *Id.* at 590, 113 S.Ct. at 2795.

**III.    Analysis**

    **A.    Robert Ketchum**

Ketchum, a mechanical engineer, performed an inspection of the site of Noftz's fall in July 2018. (Doc. 88 at 20). Among other things, he investigated (1) the likelihood of condensation forming inside the cooler and (2) whether liquid on the floor inside the cooler was likely to make its way outside the cooler to the area where Noftz fell. Based on his investigation, which

included such things as leaving the cooler door open for 30 minutes to see if condensation formed, and testing the slope of the flooring inside the entrance to the cooler, he concluded it was unlikely that the floor inside the cooler was wet on the day of Noftz's fall, and that any spills or other liquids that were on the floor would have run back into the cooler rather than out to the site of the accident.   (Doc. 88 at 21-22).

The Plaintiff takes issue with two opinions from Ketchum's report, which she describes as follows:

> a. that based on his observations of the premises' conditions on the date of his inspection -- which occurred approximately 21 months after the subject incident – there was "no evidence of moist, wet, or slippery conditions of the flooring in the area of Ms. Noftz's fall" on the date of the subject incident
>
>  …
>
> b. that Ms. Noftz's fall was caused by her left leg failing to support her as she walked, and not by her right leg slipping out from under her.

(Doc. 88 at 2-3).

The Plaintiff complains that the first opinion above is unreliable because Ketchum testified at his deposition that the temperatures of different items – the store, the cooler racks, and so forth – were important to his opinions regarding the possibility of condensation forming inside the cooler, and he did not obtain the temperatures of these items on the day of Noftz's fall.   (Doc. 88 at 8).   However, it is apparent from Ketchum's deposition that, in the absence of evidence to the contrary, he assumed that the relevant temperatures on the day in question were similar to those on the day he performed his site inspection.   (Doc. 92 at 12).   This would appear to be a reasonable assumption, as drug store air conditioners and walk-in coolers tend to be kept around the same

temperatures day in and day out.  Noftz offers no argument that such an assumption would render Ketchum's opinion unreliable.[2]

In regard to the second of these opinions, Noftz complains that Ketchum, a mechanical engineer, is unqualified to opine on the mechanics that led to her fall, as he is not a biomechanical engineer.  Noftz offers no explanation as to why a mechanical engineer would lack the relevant expertise regarding mechanical forces, friction and the like so as to offer an opinion regarding the cause of someone falling down, or why a biomechanical engineer would be required for such an assessment.

Noftz also complains that two opinions offered by Ketchum at his deposition – that the flip flops worn by Noftz likely contributed to her fall, and that a walk-off mat being placed outside the cooler could have caused more accidents than it prevented – were not properly disclosed in his expert report and he therefore should not be allowed to offer them at trial.  (Doc. 88 at 14-16).  While it is true that these opinions do not appear in Ketchum's report, they were solicited by Noftz's counsel at the deposition.  If Noftz's counsel reopens these doors at trial, Ketchum will be permitted to offer his opinion as to these issues.

The motion will be denied as to Ketchum.

**B.   Reginald Tall**

Noftz also seeks to exclude certain opinions to be offered by Reginald Tall, an orthopedic surgeon.  After reviewing Noftz's medical records and reviewing closed circuit video of the

---

[2] Noftz also complains that Ketchum overlooked record evidence of there being wet and slippery conditions in the area of her fall.  (Doc. 88 at 8-9).  However, aside from Noftz's own testimony as to the conditions where she fell (which is disputed by other testimony), the evidence of wet and slippery conditions involves other times and other locations within the store.  (Doc. 88 at 9).  Ketchum was therefore not obligated to take this evidence into account in formulating his opinion.

incident, Tall attributed Noftz's injury to Noftz's "altered gait, her underlying osteogenesis imperfecta while an outstretched mechanism reaching for the door [of the cooler] with twisting mechanism" and stated that Noftz "sustained the left femur fracture based on the underlying weakness of her bone secondary to her osteogenesis imperfecta," an opinion he said was supported by the fracture pattern on Noftz's x-rays. (Doc. 89 at 17).

Noftz complains that "the entirety" of Tall's opinion as to the cause of her fall was derived from viewing the video. (Doc. 89 at 7-8). Even assuming that this would be disqualifying – and Noftz does not explain why this would be so – Tall states that he also reviewed Noftz's medical records, including her x-rays, before reaching his conclusion. Noftz also argues that this opinion is not helpful to the jury, as jury members are in just as good a position to review the video as Tall – an argument that does not merit serious discussion.

Noftz also seeks to exclude Tall's opinion that she, as someone suffering from osteogenesis imperfecta, should not have been wearing flip flops on the day of her fall, as they are less stable than other forms of footwear. (Doc. 89 at 9). Noftz complains 1) that Tall is not a footwear expert; 2) that Tall failed to consider certain other evidence in reaching this conclusion; and 3) that Tall did not include this opinion in his expert report. (Doc. 89 at 9). However, Noftz has made no showing that footwear expertise is required to understand that flip flops generally offer less stability than, for example, sneakers; she does not explain how the other evidence she cites would invalidate Tall's opinion on this point; and, as was the case with Ketchum, Tall's opinion as to Noftz's footwear was solicited by opposing counsel at his deposition (Doc. 92 at 9), meaning Tall did not err by failing to include that opinion in his report.

The motion will be denied as to Tall.

### C. Russell Kendzior

Holiday CVS seeks to exclude the testimony of Noftz's liability expert, Russell Kendzior, who has decades of experience in slip and fall prevention. (Doc. 91 at 2). Kendzior offers the following opinions with which Holiday CVS takes issue:

1. That Noftz slipped and fell on moisture located on the Vinyl Composite Tile just outside the cooler;

2. That CVS knew of an increased likelihood of the areas in front of their refrigerated displays being wet, and therefore store employees should have inspected those areas more frequently to ensure that they were safe and dry;

3. That spilled milk may have been a chronic problem known by Holiday CVS, demanding attention and remediation from store management;

4. That because condensation and spills could accumulate in front of the store's refrigerated displays, Holiday CVS should have used "an appropriate type of floor matting" to absorb or contain the liquids;

5. That Holiday CVS should have provided a warning to Noftz, such as a sign, "as to the impending wet floor hazard"; and

6. That if the store had done the things described in 2-5 above, it is unlikely that Noftz would have slipped and fallen and been injured.

(Doc. 90-4 at 1-2).

Initially, Holiday CVS complains that Kendzior did not perform an on-site inspection of the store in question, instead basing his opinions on the testimony of Noftz and the store's former manager, Ron Bennett; photographs and video of her fall; written discovery responses; and a State of Florida Department of Agriculture Inspection Report dated December 26, 2015 (henceforth, the "Inspection Report"). Holiday CVS likens the situation here to that of *Alsip v. Wal-Mart Stores*

*E., LP*, 658 Fed. Appx. 944, 948 (11th Cir. 2016), a slip-and-fall case in which Kendzior did not perform any on-site testing and from which his expert testimony was excluded. The central issue in the case was the slipperiness of a parking lot crosswalk maintained by Wal-Mart; the plaintiff contended that Wal-Mart failed to include aggregate in the paint used for the crosswalk's stripes, which were therefore not slip-resistant in accordance with industry standards. *Id.* at 945, 947. Contrary to the suggestion of Holiday CVS, however, the lack of on-site testing was not itself the basis for the exclusion of Kendzior's testimony. The Court of Appeals did not take issue with Kendzior's assertion that, based on his decades of experience, he could determine the presence or absence of aggregate just by looking at photographs of the crosswalk stripes. *Id.* at 947-48.

The problem with Kendzior's opinion was that industry standards allowed for several other methods, besides addition of aggregate, that would make a painted surface sufficiently slip resistant. Kendzior had not ruled out these other possibilities (or actually tested the crosswalk's coefficient of friction) before reaching the conclusion that the crosswalk fell short of the standard. *Id.* Thus, the Court cannot conclude that a failure to perform onsite testing, standing alone, is a sufficient basis to exclude Kendzior's testimony.

Nonetheless, some of Kendzior's opinions fall short of the requirements of Federal Rule of Evidence 702(b), in that they are not "based on sufficient facts or data". In particular, his opinions that Holiday CVS should have used floor matting outside the cooler door and posted a warning about a wet floor hazard – and that doing so would likely have prevented Noftz's injury – are based on his opinion that the store had a "chronic" problem with liquids such as spilled milk and melting ice on the floor of the walk-in cooler, which was then tracked outside the cooler by vendors and CVS employees. (Doc. 90-1 at 19-20). According to his deposition testimony, Kendzior's opinion about the liquids on the floor of the cooler is based on the Inspection Report,

and his opinion that such liquids were tracked out of the cooler is based on the testimony of Bennett, who managed the store at the time of Noftz's fall. (Doc. 90-1 at 20). These sources do not support such conclusions.

On the last page of the Inspection Report – which the store passed – the (anonymous) inspector wrote the following, which was termed an "Observation": "Floor in walk in cooler has build-up of spills and debris." (Doc. 88 at 34). From this, in his report, Kendzior opines that "spilled milk may have been a chronic problem known by the Defendant." (Doc. 90-4 at 2).[3] However, the Inspection Report observation upon which Kendzior relies makes no mention of milk; it does not suggest that the entire floor of the cooler, or even substantial portions of it, were covered in milk or any other liquid; and there is no evidence that the "build-up of spills and debris" in the cooler persisted for the ten months between the inspection and Noftz's fall. Kendzior's opinion as to the "chronic" problem of liquids on the floor of the cooler lacks sufficient factual support.

So, too, for his opinion about any such liquids being transferred from inside the cooler to the floor where Noftz fell. At several points in his deposition, Bennett testified that employees and vendors walked in and out of the cooler to deliver new products and restock the racks. *See, e.g.,* Doc. 90-7 at 9. But Kendzior does not point to any testimony from Bennett that these individuals were tracking liquids out to the sales floor.

Based on this analysis, Kendzior's opinion #2, *i.e.*, that CVS knew of an increased likelihood of the areas in front of their refrigerated displays being wet, and therefore store employees should have inspected those areas more frequently to ensure that they were safe and

---

[3] As noted, at his deposition, Kendzior opined that the store actually had a chronic problem with liquids on the floor of the cooler, rather than such a problem being merely a possibility. (Doc. 90-1 at 19).

dry – is also unsupported.  Of the six opinions to which Holiday CVS objected, this leaves only Kendzior's opinion that Noftz slipped on moisture located just outside the cooler door.  However, this is simply a recitation of Noftz's own testimony rather than something that is properly the subject of expert testimony.

Holiday CVS's motion will be granted.

### D.    Plaintiff's Motion in Limine

On May 10, 2019, Noftz filed what she styled a "Renewed Omnibus Motion in Limine" (Doc. 94).  The filing is problematic in several ways.  First, the filing was not timely.  The deadline for filing motions in limine passed on April 26, 2019.  (Doc. 87 at 1).  And despite being styled as a motion in limine, much of the motion is concerned with *Daubert* issues, and the deadline for filing *Daubert* motions passed on April 12, 2019.  (Doc. 87 at 1).  Noftz did not provide any explanation for missing these deadlines or seek leave to file this omnibus motion out of time.

On the merits, the motion also fails.  The motion raises four issues.  Despite having already filed the *Daubert* challenges to defense experts Ketchum and Tall discussed above, two of the four issues in the omnibus motion are also *Daubert* challenges to Ketchum and Tall.  As her third issue, Noftz complains about a failure by the Defendant to provide, in a timely fashion, some of the information required by Rule 26 in regard to these two experts.  However, any lack of timeliness did not harm the Plaintiff.  After Holiday CVS provided the required information about its experts, the Court extended the discovery deadline from December 14, 2018 to March 15, 2019, giving Noftz plenty of time to take the necessary depositions – which she did.  (Doc. 87 at 1).

Finally, Noftz seeks to prevent Holiday CVS from introducing any evidence or argument regarding "the 'non-occurrence' or 'infrequent/low level occurrence' of prior incidents, claims, adjustments, lawsuits, or accidents involving a slip and fall in the area in front of the walk-in cooler at the subject CVS store." (Doc. 94 at 19). But as Noftz points out in the motion itself, her theory of liability is, in part, that Holiday CVS "was negligent in the maintenance of the floor inside of its walk in cooler, which it knew or should have known was routinely wet from spillage from large quantities of milk stored upon rolling shelves, and on the floor inside of said cooler". (Doc. 94 at 20). Under Florida law, a so-called "no-accident history" of the location of a premises liability case may be admitted into evidence for a variety of purposes, including the central one of showing that the area was not in fact dangerous or defective. *Lewis v. Sun Time Corp.*, 47 So. 3d 872, 873 (Fla. 3d DCA 2010) (citing cases).

For all of these reasons, the omnibus motion will be denied.

**IV.** **Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Plaintiff's motions to exclude expert testimony (Doc. 88, 89) are **DENIED**. And it is further

**ORDERED** that the Defendant's motion to exclude expert testimony (Doc. 90) is **GRANTED**. And it is further

**ORDERED** that the Plaintiff's Renewed Omnibus Motion in Limine (Doc. 94) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 5, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE